IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHAWN LOCKHART, JR., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 5:25-cv-81-MTT-AGH |
| | : |
| GEORGIA DEPARTMENT OF CORRECTIONS, *et al.*,[1] | : |
| | : |
| Defendants. | : |

# ORDER AND RECOMMENDATION

*Pro se* Plaintiff Shawn Lockhart, Jr., a prisoner at Wilcox State Prison in Abbeville, Georgia filed a civil rights complaint (ECF No. 1) and paid the filing fee. For the following reasons, Plaintiff's claims against Defendants shall proceed for further factual development. It is **RECOMMENDED**, however, that his request for a preliminary injunction (ECF No. 2) be **DENIED**

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Plaintiff filed a "Motion for Preliminary Injunction and Temporary Restraining Order" (ECF No. 2). Plaintiff asks this Court to grant most of the injunctive relief

---

[1] In the docketing of this civil action, the Clerk listed only a few of Plaintiff's named Defendants. The Clerk of court is **DIRECTED** to add to the docket Plaintiff's other named Defendants: Autry State Prison Chaplain Douglas Simmons, Regional Director Benjamin Ford, Wilcox State Prison Deputy Warden Tonya Ashley, Wilcox State Prison Deputy Warden Joseph Burnette, Wilcox State Prison Chaplain John Sisson, Wilcox State Prison Warden Charles Mims, Regional Director Jermaine White, Director of Field Operations Stan Shepard, Wilcox State Prison Food Service Manager Ms. Walker, Wilcox State Prison Kitchen Stewardess Ms. Trammell, and the Georgia Department of Corrections General Counsel/Designee. Compl. 11, 16-18, ECF No. 1.

requested in his complaint including but not limited to ordering Defendants to approve "[a]ll Special Religious Requests henceforth . . . that are in alignment with current Policy in SOP 106" for "Plaintiff and his community, the Assembly of Yisrael[.]"[2]  Mot. for Prelim. Injunction Attach. 1, at 1, ECF No. 2-1.  It also appears that Plaintiff requests that this Court immediately order Defendants to allow Plaintiff to grow his hair to an unspecified length "without grooming interference by the Defendants" so that he may "exercise the Nazarite Vow[.]"  *Id*. at 2.  Lastly, he requests that the Court order Defendants not to transfer him to another prison "unless brought before this Court for consideration" and that he "reserves the right to request a transfer of his own accord."[3]  *Id.*

A preliminary injunction or temporary restraining order ("TRO") [4] is a drastic remedy used primarily to preserve the status quo rather than to grant most or all of

---

[2] In his complaint, Plaintiff asserts that he has "able authority to speak on behalf of . . . [his] fellow Hebrew Israelites" and often complains about how other prisoners who share his faith have been treated and requests relief on behalf of himself and those that share his faith. Aff. 1, ECF No. 1-3; *see also* Mot. for Prelim. Injunction 4, ECF No. 2; Mot. for Prelim. Injunction Attach. 1, ECF No. 2-1. However, a *pro se* plaintiff cannot represent the interest of other prisoners nor litigate on their behalf. *See, e.g.*, *Johnson v. Brown*, 581 F. App'x 777, 781 (11th Cir. 2014) (finding *pro se* litigant cannot bring an action on behalf of his fellow inmates); *Bass v. Benton*, 408 F. App'x 298 (11th Cir. 2011) (affirming dismissal of *pro se* § 1983 class action because "the general provision permitting parties to proceed *pro se*" does not provide "a personal right that . . . extend[s] to the representation of the interests of others" (quoting *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) and noting that the Eleventh Circuit, as the former Fifth Circuit, has previously "affirmed the dismissal of the portion of a prisoner's complaint seeking relief on behalf of fellow inmates" (citing *Massimo v. Henderson*, 468 F.2d 1209, 1210 (5th Cir. 1972)).

[3] Even if Plaintiff were to ultimately prevail in this civil action, the Court cannot decide whether Plaintiff can be transferred to a different state prison. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 229 (1976) (citations omitted) ("The federal courts do not sit to supervise state prisons, the administration of which is acute interest to the States."); *Sanchez v. McCray*, 349 F. App'x 479, 481-82 (11th Cir. 2009) (citing *Meachum*, 427 U.S. at 224) (noting that "[t]here is no constitutionally protected liberty interest in being housed in a certain prison or a certain section within a prison.").

[4] The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010).

2

the substantive relief sought in the complaint. *See, e.g., Robinson v. Att'y Gen.*, 957 F.3d 1171, 1178-79 (11th Cir. 2020) ("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated."); *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982). "Mandatory preliminary relief," as Plaintiff seeks here, "goes well beyond simply maintaining the status quo[,] is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017) (alteration in original) (internal quotation marks omitted) (citation omitted). Further, "[b]ecause a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and [the] plaintiff must clearly carry the burden of persuasion." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (quotation marks and citation omitted).

A movant must establish the following factors to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995). The failure to establish any one element will warrant denial of the request for preliminary injunctive relief and obviate the need to consider the remaining requirements. *See Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal"); *Pittman v. Cole*, 267 F.3d 1269,

1292 (11th Cir. 2001) (noting that "when a plaintiff fails to establish a substantial likelihood of success on the merits, a court does not need to even consider the remaining three prerequisites of a preliminary injunction.").

At this juncture, the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits. Defendants have not been served so they have had no meaningful notice to respond to Plaintiff's allegations. Defendants should be afforded an opportunity to respond to Plaintiff's allegations prior to the Court issuing any preliminary injunction or TRO. *See* Fed. R. Civ. P. 65.

Furthermore, regardless of whether a plaintiff can establish a likelihood of success on the merits, the absence of irreparable injury, standing alone, warrants denial of a motion for preliminary injunctive relief. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Indeed, a "showing of irreparable injury 'is the sine qua non of injunctive relief.'" *Id.* (citation omitted). In particular, a "preliminary injunction requires showing *imminent* irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (internal quotation marks omitted) (emphasis added). The "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* Thus, to determine whether a plaintiff has shown irreparable injury, courts must consider whether the plaintiff has acted diligently in seeking relief because a "delay in seeking a preliminary injunction of even a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Id.*

4

Here, Plaintiff submitted an "affidavit of truth" in which he discusses several different interactions with prison officials that he alleges infringed upon his civil rights. Aff. 1-9, ECF No. 1-3. These incidents span from 2017 to November 2023, *see id.* at 1-9, and Plaintiff generally states that during the "year of 2024" there were "many days cancelled for weekly assembly" but Plaintiff and his fellow inmates "were accommodated for the main High Holy Feast Days, with the exception of Hanukkah." *Id.* at 9. However, Plaintiff did not file his lawsuit until February 2025. Consequently, Plaintiff has not established irreparable harm because he waited more than seven years from his first alleged religious infringement before seeking relief.

In sum, because Plaintiff has not shown a substantial likelihood of ultimate success on the merits at this early stage in the litigation and because Plaintiff has not shown irreparable harm, it is **RECOMMENDED** that Plaintiff's request for preliminary injunctive relief be **DENIED**.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.  Standard of Review

The Prison Litigation Reform Act ("PLRA") directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir.

5

2020). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act

or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights).

II.   Plaintiff's Factual Allegations

Plaintiff's claims arise from his incarceration at Autry State Prison, Wilcox State Prison, and within the Georgia Department of Corrections ("GDC") generally. Compl. 3, ECF No. 1. Plaintiff states that in 2016, he "became an active member of the 'Hebrew Israelite community' at Autry State Prison." Aff. 1. He alleges that a "*shofar* belonging to" his community "went missing in 2022 at Autry State Prison." Compl. 12. Plaintiff complains that although his grievance was denied "on [the] basis of the *shofar* being found," Defendant Simmons "verified with Plaintiff that he had not found the actual *shofar* belonging to Plaintiff('s community), which was a 'kudu horn.'" *Id*. Plaintiff was transferred to Wilcox State Prison in April 2023 where he "encouraged" Defendant Sisson "to contact Chaplain Simmons at Autry to have the so-called 'replaced shofar' delivered to Wilcox since Autry had been closed down, to no avail." *Id*. Plaintiff claims that his "'RLUIPA Rights' have been violated; and that the Defendants are liable for the shofar[.]" *Id*. at 13.

7

Plaintiff also states that on June 25, 2023, he had a "respectable verbal dispute" with Defendant Ford about prison policy regarding Plaintiff's religious headwear of a fitted turban cap. Compl. 13. Plaintiff contends that Defendant Ford decided that Defendant Ashley should review prison policy as to the headwear and after that review, Defendant Ford directed Defendant Burnette to "confiscate Plaintiff's fitted turban cap[.]" *Id.* Plaintiff further complains that "over a year later on Thanksgiving Week of 2024," Defendant Mims "advised" Plaintiff that tassels were not approved and he could not wear them. *Id.* at 14. Plaintiff again asserts that "his 'RLUIPA Rights' have been violated; and that the Defendants are liable for the fitted turban cap" and that "tassels must also be examined in the scope of RLUIPA." *Id.* at 13-14.

Plaintiff states that he "filed approximately seven Special Religious Requests at Wilcox SP" in May and July 2023 and that there "was no action in response" to his requests. Compl. 14. Plaintiff's Special Religious Requests "amount to the following categories: (a) Established worship services and classes; (b) Distinct religious headwear; (c) Anointing Oil; (d) Grooming . . . (1) Beard, (2) Head Hair, (3) Nazarite Vow; (e) Tassels; (f) Incense and candles; (g) Wine; (h) Special Diet (kosher, vegan, etc.); (i) Literature; (j) Linen garments; (k) Community guidelines[.]" *Id.* at 16-17. Plaintiff complains that he "has either suffered unlawful restriction, infringement, deprivation, or denial" of his requests. *Id.* at 17. Plaintiff further asserts that he "was deprived of a review on every administrative level in the process" and that he received "[n]o formal response [to his Special Religious Requests] frustrating [his]

8

rights and depriving him of lawful religious liberties." *Id.* at 14. Plaintiff claims that this violates "his 'RLUIPA Rights'" and "does not satisfy the Constitutional requirements for Due Process." *Id.* at 14-15.

Plaintiff further alleges that on October 14, 2024, Defendant Sisson issued a memo containing "instructions for Food Service to accommodate the religious observance of fasting for the Day of Atonement aka Yom Kippur." Compl. 15. Plaintiff complains that Defendants Walker and Trammel amended these instructions which "resulted in the confusion as to why Plaintiff did not receive his meals to break his fast like everyone else[.]" *Id.* As to this incident, "Plaintiff's Claim is that his 'RLUIPA Rights' have been violated[.]" *Id.* at 16.

III. Plaintiff's Claims

    A. *First Amendment and The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") claims*

Plaintiff complains that the Defendants violated his First Amendment rights, and he brings a civil rights claim under 42 U.S.C § 1983. Compl. 5. The First Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof". U.S. Const. amend. I. "[P]rison inmates retain protections afforded by the First Amendment's Free Exercise Clause," and thus prison officials may limit an inmate's exercise of sincerely held religious beliefs only if such "limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)).

9

Plaintiff further alleges claims under RLUIPA, 42 U.S.C. § 2000cc, *et seq.* Compl. 5. RLUIPA affords greater protection to religious freedom than the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015). RLUIPA requires the government to justify any substantial burden on a prisoner's religious exercise by demonstrating a compelling governmental interest. *Id.* at 357-58. To the extent a plaintiff sues defendants in their individual capacities, however, RLUIPA does not provide for an award of monetary damages against individual prison or jail officials. *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007) (holding that "section 3 of RLUIPA . . . cannot be construed as creating a private action against individual defendants for monetary damages"), *abrogated on other grounds by Sossamon v. Tex.*, 563 U.S. 277 (2011), *and overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353, 1363-64 (11th Cir. 2021) (en banc)). "To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate '1) that he engaged in a religious exercise, and 2) that the religious exercise was substantially burdened.'" *Smith v. Governor for Ala.,* 562 F. App'x 806, 813 (11th Cir. 2014) (citation omitted). Once a plaintiff makes such a showing, the burden shifts to the defendant to show that the challenged regulation "'(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest.'" *Holt*, 574 U.S. at 362 (alterations in original).

Here, Plaintiff's allegations are sufficient to warrant further factual development under both § 1983 and RLUIPA. While there may be "legitimate penological interests" that would justify the decisions made by Defendants regarding

Plaintiff's religious requests, at this stage of the litigation such interests are not apparent from the face of the complaint. *See Johnson*, 581 F. App'x at 780-81 (reversing district court's preliminary screening dismissal of RLUIPA and First Amendment free exercise claims where prisoner's *pro se* complaint alleged that prison officials infringed his practice in numerous ways and it was not apparent from the complaint what the prison officials legitimate penological interests were); *see also Saleem v. Evans*, 866 F.2d 1313, 1316 (11th Cir. 1989) (noting in appendix to case that generally the court should "permit dismissal of a First Amendment claim only if it involves a religious claim so facially idiosyncratic that neither a hearing nor state justification of its regulation is required"). Accordingly, Plaintiff's 42 U.S.C §1983 First Amendment religious freedom claims and RLUIPA claims shall proceed against Defendants for further factual development.

  B. *Due Process Claims*

Plaintiff claims that "the Defendants are liable for having a special Religious Request process in place that does not satisfy the Constitutional requirements for Due Process." Compl. 14-15. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (holding that "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.").

To prevail on a procedural due process claim, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Prisoners' liberty interests are already restricted due to their incarceration, thus determining whether a prisoner has satisfied the first element of a due process claim is situationally curtailed. *See Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) ("Whether an inmate has a protected liberty interest that would entitle him to due process protections 'is often a difficult determination in the context of a prison, because prisoners have already been deprived of their liberty in the ordinary sense of the term.'"). In light of that difficulty, the Supreme Court created a test for determining when a protected liberty interest exists for a prisoner. *Sandin v. Conner*, 515 U.S. 472 (1995). Under that test, a prisoner has a protected liberty interest when there is a deprivation that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. When applying this test, courts must consider "[b]oth the period of time and the severity of the hardships[.]" *DelGiudice v. Primus*, 679 Fed. App'x 944, 947 (11th Cir. 2017) (citing *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004)).

Here, regarding his Special Religious Requests, Plaintiff complains that he "was deprived of a review on every administrative level in the process" and "[n]o formal response was ever given to any of these Requests; frustrating [his] rights and depriving him of lawful religious liberties." Compl. 14. Plaintiff cites no case law,

and the Court has found none, which would indicate that Plaintiff has a constitutional state-created liberty interest in "Special Religious Requests" that would trigger Due Process protection. Plaintiff vaguely and ubiquitously refers to the "Religious Freedom Restoration Act". Compl. 5. However, the Federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ("FRFRA") does not confer upon Plaintiff a liberty interest in state prison procedures because the FRFRA does not apply to the states. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 (2014) (recognizing that in *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court found that Congress exceeded its authority in applying the FRFRA to the states); *Brunskill v. Boyd*, 141 F. App'x 771, 775 (11th Cir. 2005) ("the [F]RFRA does not apply to state regulations or state actors."). Furthermore, Georgia did not have a state ratified Religious Freedom Restoration Act in place when Plaintiff initiated this civil action on February 6, 2025. 2025 Ga. Laws Act 6 § 3 (eff. Apr. 4, 2025); *cf. Dorman v. Aronofsky*, 36 F.4th 1306, 1315 (11th Cir. 2022) (assuming without deciding that Florida's Religious Freedom Restoration Act "creates a liberty interest sufficient to trigger due process protections" for prisoners in Florida).

"The Due Process Clause also does not create a liberty interest in the 'mandatory' language of prison rules and regulations." *Morrall v. Warden*, 859 F. App'x 883, 884 (11th Cir. 2021) (citing *Sandin*, 515 U.S. at 482-84); *see also Bingham*, 654 F.3d at 1177 (recognizing and agreeing that, as various circuits have held, "an inmate has no constitutionally-protected liberty interest in access to [a prison's grievance] procedure"); *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) (holding

13

that "[s]tate-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory"). However, out of an abundance of caution, and at this early stage of litigation, the Court will allow Plaintiff's procedural due process claims regarding the Special Religious Request procedures to proceed for further factual development.

## CONCLUSION

Based on the foregoing, Plaintiff's First Amendment free exercise of religion claims under § 1983, his RLUIPA claims, and his procedural Due Process claims shall proceed for further factual development. However, it is **RECOMMENDED** that Plaintiff's "Motion for Preliminary Injunction and Temporary Restraining Order" (ECF No. 2) be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the Plaintiff may file written objections to this recommendation to deny the preliminary injunctive relief with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Order and Recommendation. The Plaintiff may seek an extension of time to file objections to the recommendation to deny the preliminary injunction, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection to the Magistrate's recommendation should be no longer than **TWENTY (20) PAGES** in length. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and

legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Because Plaintiff is not proceeding *in forma pauperis* in this case, and the Court has found that Plaintiff made colorable constitutional violation claims against the Defendants, it is **ORDERED** that Plaintiff serve these Defendants and that they file an Answer, or such other response as may be appropriate under Federal Rule or Civil Procedure 12, 28 U.S.C. § 1915, and the PLRA. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Federal Rule of Civil Procedure 4(d).

Plaintiff must secure service upon the Defendants in accordance with the provisions of Federal Rule of Civil Procedure 4. The Court is providing Plaintiff with a Rule 4 Service Package, which contains instructions, the necessary forms to use for waiver of service, and a copy of Federal Rule Civil Procedure 4. While Plaintiff may request a waiver of service of summons from Defendants in accordance with Federal Rule of Civil Procedure 4(d), if Defendants do not waive service, Plaintiff must arrange for service by a person authorized to make service under Federal Rule of Civil Procedure 4(c). In accordance with Federal Rule of Civil Procedure 4(m), failure to achieve service within ninety (90) days after filing of the Complaint may result in dismissal of this case. If Plaintiff is financially unable to arrange for service of process, he may submit a motion to the Court in which he (1) explains to the Court what efforts he made to perfect service and (2) includes an affidavit in support of his claim of indigence, along with a certified copy of his trust fund account statement (or

institutional equivalent) for the previous six-month period.

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and

correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion

(whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal

Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED**, this 1st day of August, 2025.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE